United States District Court
Southern District of Texas
**ENTERED**
February 02, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ALANIS LOGISTICS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:21-cv-00235 |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND PROTECTIVE ORDER

The Court now considers Defendant "JPMorgan Chase Bank's Opposed Motion for Protective Order Regarding Requests for Production."[1] The motion is actually unopposed because Plaintiff failed to file a response and the time for doing so has passed.[2] After considering the motion, record, and relevant authorities, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion and issues a protective order.

### I. BACKGROUND

Plaintiff commenced this case in state court on May 12, 2021, alleging that Defendant JPMorgan Chase Bank, N.A. authorized "one or more [third] parties unknown and unrelated to Plaintiff" to withdraw Plaintiff's funds from Plaintiff's bank account.[3] Plaintiff's claims in this case include negligence, gross negligence, breach of contract, and violation of the Texas Deceptive Trade Practices-Consumer Protection Act.[4] Defendant removed to this Court on June 11th.[5] On January 6, 2022, this Court entered its First Amended Scheduling Order which provided for the

---

[1] Dkt. No. 24.
[2] LR7.4 ("Failure to [timely] respond to a motion will be taken as a representation of no opposition.").
[3] Dkt. No. 1-4 at 3–4, ¶¶ 9–11.
[4] *Id.* at 4–5, ¶¶ 15–18.
[5] Dkt. No. 1.

1 / 9

close of discovery on March 31, 2022.[6] Also on January 6th, the Court resolved numerous pending motions "except for Defendant's December 30, 2021 motion for protective order regarding Plaintiff's requests for production."[7] The motion is now ripe for consideration and is unopposed in light of Plaintiff's failure to timely respond to Defendant's motion. The Court turns to its analysis.

## II. DISCUSSION

### a. Legal Standard

"The district court may, for good cause, issue a protective order to 'protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"[8] However, "[t]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule."[9] The good cause standard and the balancing of interests approach calls for more than a mere request; "[t]he movant bears the burden of showing that a protective order is necessary, 'which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'"[10] Assertions of "ordinary garden variety or boilerplate 'good cause' facts which will exist in most civil litigation" are insufficient to warrant a protective order.[11] Assuming the movant has submitted specific facts, "[u]nder the balancing standard, the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party."[12] Entering a protective order absent a particularized

---

[6] Dkt. No. 26 at 6.
[7] *Id.* at 9.
[8] *In re LeBlanc*, 559 F. App'x 389, 392 (5th Cir. 2014) (quoting FED. R. CIV. P. 26(c)(1)).
[9] *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016) (quotation omitted).
[10] *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)).
[11] *BCI Commc'n Sys., Inc. v. Bell Atlanticom Sys., Inc.*, 112 F.R.D. 154, 160 (N.D. Ala. 1986), *cited in In re Terra Int'l, Inc.*, 134 F.3d at 307.
[12] 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 26.101[1][c] (3d ed. 2011 & Supp. Dec. 2021), *quoted in Cazorla*, 838 F.3d at 555; *see In re Eli Lilly & Co., Prozac Prod. Liab. Litig.*, 142 F.R.D. 454, 458 (S.D. Ind. 1992) ("The plaintiffs have articulated no reasons to explain why they need the reporters' names. On the

demonstration of good cause may constitute an abuse of discretion.[13] Nevertheless, the protective order standard is more lenient than sealing judicial records.[14] Additionally, the motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."[15]

### b. Analysis

Sometime in 2021, Plaintiff served Defendant with its thirty-one requests for production. On October 8, 2021, Defendant responded[16] with "over 400 pages of documents" and a list of the categories of documents withheld.[17] Defendant now "requests a protective order regarding Requests 1, 2, 6-9, 11-17, and 22-31, Requests 4 and 10, and Requests, 3, 5, and 18 – 21."[18] Despite this incredibly bizarre phrasing, Defendant is seeking a protective order as to all thirty-one of Plaintiff's requests for production. Defendant included a certificate of conference stating that it "attempted to confer with opposing counsel regarding the filing of [the] Motion, but he did not respond."[19] The Court finds Defendant's certificate satisfies the Federal Rule of Civil Procedure 26(c)(1) requirement to attempt to confer before seeking court intervention.

Defendant first requests a protective order against certain numbered requests that "could encompass disclosure of information regarding the reporting of banking transactions or other activity where said information is considered confidential, privileged or protected from disclosure

---

other hand, Lilly has articulated significant public policy reasons (the maintenance of the voluntary reporting system and the protection of voluntary reporters' expectations of confidentiality) for not releasing the names."), *cited in* 6 MOORE'S FEDERAL PRACTICE – CIVIL § 26.101 n.16.
[13] *See In re Terra Int'l*, 134 F.3d at 306.
[14] *See Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417–18 (5th Cir. 2021).
[15] FED. R. CIV. P. 26(c)(1).
[16] Dkt. No. 16 at 10–27.
[17] Dkt. No. 24 at 2, ¶ 2.
[18] *Id.* at 5, ¶ 7.
[19] *Id.* at 7.

and/or production or disclosure of said information is otherwise prohibited by law."[20] The basis for this request arises from the USA PATRIOT Act of 2001.[21] That Act's implementing regulations state that:

> No bank, and no director, officer, employee, or agent of any bank, shall disclose a [Suspicious Activity Report] or any information that would reveal the existence of a SAR. Any bank, and any director, officer, employee, or agent of any bank that is subpoenaed or otherwise requested to disclose a SAR or any information that would reveal the existence of a SAR, shall decline to produce the SAR or such information, citing this section and 31 U.S.C. 5318(g)(2)(A)(i) . . . .[22]

Courts that have reviewed the law, this regulation, administrative commentary, and relevant jurisprudence have concluded that a privilege against disclosure applies to SAR-specific documentary evidence,[23] described by the Fifth Circuit as "an absolute prohibition on financial institutions from disclosing to third parties information about the filing of a SAR,"[24] but that "the underlying transaction such as wire transfers, checks, deposits, etc. are disclosed as part of the normal discovery process."[25] This Court has not been urged to, and sees no reason to, depart from this customary interpretation of what financial records are discoverable. Accordingly, all financial records are discoverable "with the exception of any document that refers to the filing of a SAR, refers to the fact that a SAR was not filed, or would otherwise disclose information about the decision to file or refrain from filing a SAR."[26] The Court's protective order, *infra*, will set out the specific language governing Defendant's disclosures in this case.

---

[20] *Id.* at 3–4, ¶ 4.
[21] Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, § 351(b), 115 Stat. 272 (2001).
[22] 31 C.F.R. § 1020.320(e)(1)(i).
[23] *See Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09 CIV. 3701 JPO JCF, 2015 WL 1726435, at *3 (S.D.N.Y. Apr. 15, 2015) (citing *In re Whitley*, No. 10–10426C–7G, 2011 WL 6202895, at *4 (Bankr. M.D.N.C. Dec. 13, 2011)).
[24] *BizCapital Bus. & Indus. Dev. Corp. v. Comptroller of Currency of U.S.*, 467 F.3d 871, 872 n.3 (5th Cir. 2006)
[25] *Cotton v. PrivateBank & Tr. Co.*, 235 F. Supp. 2d 809, 814 (N.D. Ill. 2002).
[26] *Fort Worth Emps.' Ret. Fund*, 2015 WL 1726435, at *3.

Defendant further objects to Plaintiff's requests as follows:[27]

|  | The requests place a burden or expense on Defendant that outweighs its likely benefit. | The issues at stake do not justify the requests. | The information requested is not proportional to the amount in controversy. |
|---|---|---|---|
| Numbered requests for production. | 1–31 | 1–2, 4, 6–9, 10–17, 22–31 | 1–2, 6–9, 11–17, 22–31 |

However, conclusory objections of "undue burden" or "disproportionate," without addressing *why* a discovery request specifically poses an undue or disproportionate burden on Defendant is insufficient.[28] In other words, the Court will not tease out every line of Plaintiff's discovery requests and speculate on their burden to Defendant when Defendant could not be bothered to explain and justify why a protective order is necessary for a specific request.

Instead, the Court turns to Defendant's specific objections. Defendant argues that requests for production 6–9 and 14–15 and 16–17 and 22–23 and 27–31 and 18–21 "entail extensive search inquiries" that are disproportionate to the needs of this case.[29] The Court will analyze each group of requests. Plaintiff's requests for production numbers 6–9 are requests for "[e]ach written communication [and notice of claim and petition] which was created after 12-31-2015, and which relates to any misappropriation of money perpetrated in substantially the same way as those misappropriations made subjects of this case."[30] Requests 6–9 are not bound by geography, or by any particular kind of record ("written communication" may encompass even a notation in a personnel file), or even by substance ("perpetrated in substantially the same way" is open to varying interpretations—it could theoretically include money voluntarily transferred between accounts that the accountholder forgot was voluntary and entered a complaint). The Court agrees

---

[27] Dkt. No. 24 at 4–5, ¶ 6.
[28] *See supra* notes 10–11.
[29] Dkt. No. 24 at 5, ¶ 7.
[30] Dkt. No. 16 at 14–16.

that these requests are overbroad and without the scope contemplated by Federal Rule of Civil Procedure 26(b)(1).

Requests 14–15 seek "[e]ach writing created in 2021, which relates to any failure by an employee of Defendant properly to act to prevent [or detect] misappropriation of Defendant's customers' funds held in bank accounts like Plaintiffs subject bank accounts."[31] These two requests are not limited by geography, or type of employee, or type of customer, or even by the meaning of the word "misappropriation." The Court agrees that these requests are overbroad and without the scope contemplated by Federal Rule of Civil Procedure 26(b)(1).

Defendant also objects to requests 16–17.[32] Those two requests seek "[e]ach compilation of data prepared by or for Defendant, which relates to misappropriations of funds on deposit with Defendant [or reports thereof], and which contains data relating to events that occurred after 12-31-2015."[33] What constitutes a "compilation of data" is left undefined and could sweep in every morsel of data that related to an also-undefined "misappropriation." Because Plaintiff's vague requests sweep too broadly, the Court agrees with Defendant that they are disproportionate to the needs of this case.

Plaintiff's requests for production numbers 22 and 23 seek "[e]ach compilation of amounts of money paid since 12-31-2015 by Defendant [and by Defendant's insurers], on account of misappropriations of funds on deposit with Defendant."[34] This broad request is substantially identical to requests 16–17, sweeps too broadly, and is disproportionate to the needs of this case.

---

[31] *Id.* at 18–19.
[32] Dkt. No. 24 at 5, ¶ 7.
[33] Dkt. No. 16 at 20.
[34] *Id.* at 22–23.

Defendant next objects to requests 27–31 because of the overbreadth of the requests.[35] These requests seek "[d]ocuments, however denominated, sufficient to identify the total amount of money paid to and/or for the benefit of Defendant's customers in 2016[–2020], as compensation for misappropriated funds and/or damages resulting from misappropriated funds."[36] Requests 27–31 are not different in kind from requests 22–23, except that they do not seek any information from 2021 or 2022. Given the Court's foregoing analysis, the Court holds that these requests impose more hardship than the probative value of the information to Plaintiff and that a protective order is warranted to protect Defendant from these requests.

Defendant also objects to requests 18–21 because of their overbreadth.[37] These requests seek "[e]ach newspaper article, [magazine article, journal article, and periodical article] which relates to a misappropriation and/or alleged misappropriation of funds on deposit with Defendant, which was created after 12-31-2015."[38] However, Federal Rule of Civil Procedure 26 does not generally permit a proponent of discovery to shift the burden of researching public information onto the respondent.[39] Plaintiff is likely to be in an even better position than Defendant in identifying media that is relevant to Plaintiff's case. Accordingly, the Court does not find that Plaintiff's broad requests for public information are within the permissible scope of Rule 26(b)(1).

Defendant additionally seeks a protective order against requests for production numbers 13 and 24–25 because such requests "seek private, personal, and sensitive information regarding JPMorgan employees."[40] Request 13 seeks "[t]he performance evaluations of each person employed by Defendant, whose 2021 job duties have included preventing and/or detecting

---

[35] Dkt. No. 24 at 5, ¶ 7.
[36] Dkt. No. 16 at 25–27.
[37] Dkt. No. 24 at 5, ¶ 7.
[38] Dkt. No. 16 at 21–22.
[39] *See Trevino v. Caliber Home Loans, Inc.*, 564 B.R. 890, 918–19 (Bankr. S.D. Tex. 2017).
[40] Dkt. No. 24 at 6, ¶ 8.

misappropriations of money from bank accounts which included Plaintiffs subject bank accounts."[41] Requests 24 and 25 seek "[e]ach notice [and report] of termination of employment issued by Defendant after 12-31-2015 on account of misappropriation of funds on deposit with Defendant."[42] Request 13 could include a 1991 performance evaluation of a 30-year veteran employee who happened, in 2021, to have been involved in detecting misappropriations, and could sweep in the performance evaluation of every single teller, middle manager, and vice president whose job duties include a requirement to disclose a suspected misappropriation of funds. The Court does not find the time-unlimited and broad nature of request 13 to be proportionate to the needs of this case. Similarly, requests 24–25 are not limited to employees related to the alleged misappropriation at issue in this case, but instead would sweep in every employee of Defendant's large organization who was terminated at least partly because of a "misappropriation" of funds, even a bank teller that misplaced a dollar once in their ten-year career. The Court does not find requests 13, 24, or 25 to be proportionate to the needs of this case.

### III. PROTECTIVE ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's unopposed motion for a protective order.[43] The Court issues the following protective order pursuant to Federal Rule of Civil Procedure 26(c):

With respect to Plaintiff's requests for production attached as Exhibit 1 to Plaintiff's December 9, 2021 motion to compel production,[44] the Court **QUASHES** request numbers 6–9, 13–25, and 27–31.

---

[41] Dkt. No. 16 at 18.
[42] *Id.* at 23–24.
[43] Dkt. No. 24.
[44] Dkt. No. 16 at 9–27.

With respect to all of Plaintiff's requests for production, Defendant need not produce any Suspicious Activity Report (SAR) as defined by 31 C.F.R. § 1020.320(e) or 21 C.F.R. § 21.11(k), or any document that refers to the filing of a SAR, refers to the fact that a SAR was not filed, refers to any decision whether to file a SAR, or any document that identifies information as being part of the contents of a SAR, even if such disclosure would be responsive to any of Plaintiff's requests for production. Defendant need not list any document or information withheld under this paragraph.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 2nd day of February 2022.

_____
Micaela Alvarez
United States District Judge